**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **W DEVELOPMENT, LLC,** | CIVIL ACTION: - |
| PLAINTIFF, | |
| V. | |
| **PHANTOM TECHNOLOGIES, INC.,** | JURY TRIAL DEMANDED |
| DEFENDANT. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**TO THE HONORABLE COURT:**

**COME NOW,** Plaintiff W Development, LLC, through its undersigned counsel, and respectfully state, allege and pray:

### I.    NATURE OF THE ACTION

1.    This action arises from Defendant Phantom Technologies, Inc.'s ("Phantom") interruption of Plaintiff W Development, LLC's ("W Development") ordinary wallet transaction flow for its application CloneMe, followed by Phantom's refusal to clear or normalize the application after Plaintiff sought review and remediation. Actions that are arbitrary and non-transparent gatekeeping practices, and exclusionary conduct that materially interfered with Plaintiff's ability to commercially launch and compete within the Solana blockchain ecosystem.

2.    W Development developed CloneMe as a non-custodial blockchain-integrated application that allows users to create and launch meme tokens through standard Solana transaction architecture using explicit user-approved wallet signatures. CloneMe does not

- 1 -

custody user funds, collect private keys or seed phrases, auto-execute transactions, inject hidden instructions, perform unauthorized signing, or engage in wallet-draining or phishing behavior.

3.     After CloneMe became publicly available through the Chrome Web Store, Phantom replaced the ordinary wallet confirmation process with a request-blocking and unsafe-confirmation warning flow stating that CloneMe "could be malicious" and requiring users to proceed through unsafe override screens before continuing.

4.     Plaintiff promptly contacted Phantom seeking clarification, technical review, remediation guidance, and removal or normalization of the warning status. In written communications, Phantom stated that Plaintiff's domain was not blacklisted, that the issue concerned lack of whitelist or allowlist clearance, that Phantom does not review code for safety determinations, and that clearance depended on non-technical criteria such as GitHub history, social activity, public identity, or vouching from developers known to Phantom.

5.     Phantom's public blocklist representation, its user-facing request-blocking warnings, and its private explanation that CloneMe was not blacklisted but merely not whitelisted created a materially misleading security impression concerning CloneMe and impaired Plaintiff's launch efforts, commercialization activities, market credibility, goodwill, and ability to operate under ordinary wallet transaction conditions within the Solana ecosystem.

6.     Plaintiff brings this action for violation of Section 2 of the Sherman Act, damages under Section 4 of the Clayton Act, false or misleading representations under Section 43(a) of the Lanham Act, Puerto Rico extra-contractual liability under Article 1536 of the Puerto Rico Civil Code, commercial disparagement/injurious falsehood, declaratory relief, and injunctive relief.

## II.    JURISDICTION AND VENUE

7.    This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiff asserts claims arising under federal law, including Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 4 of the Clayton Act, 15 U.S.C. § 15(a), and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8.    This Court has supplemental jurisdiction over Plaintiff's Puerto Rico law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as Plaintiff's federal claims.

9.    In the alternative, this Court has diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant.

10.    Plaintiff W Development LLC is a citizen of Puerto Rico for diversity purposes because its sole member is a citizen of Puerto Rico.

11.    Defendant Phantom Technologies, Inc. is a citizen of Delaware and California for diversity purposes because it is incorporated in Delaware and has its principal place of business in California.

12.    Venue is proper in the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and injuries giving rise to Plaintiff's claims occurred in this District.

13.    Venue is also proper pursuant to 15 U.S.C. § 22 because Defendant transacts business in interstate commerce and the claims arise from Defendant's nationwide wallet services and transaction systems.

### III.   THE PARTIES

14.     Plaintiff, W Development, LLC (hereinafter referred to as "W Development") is a limited liability company registered in Puerto Rico under Registration Number 504338, with principal office at 203 Casa Linda Village, Bayamón, Puerto Rico 00959. W Development is a software and technology development company engaged in the creation of blockchain-integrated software systems, decentralized application technologies, automation systems, and commercial digital infrastructure.

15.     Defendant, Phantom Technologies, Inc. (hereinafter referred to as "Phantom") is a foreign profit corporation (Delaware) with its principal place of business located at 447 Sutter Street, Suite 405, San Francisco, California 94108. Upon information and belief, Phantom develops and operates one of the dominant non-custodial wallet systems within the Solana blockchain ecosystem.

### IV.   FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.     W Development developed CloneMe as a blockchain-integrated application and browser extension designed to allow users to create and launch meme tokens through standard Solana transaction architecture.

17.     CloneMe operates as a non-custodial application. It does not custody user funds, collect private keys or seed phrases, auto-execute transactions, inject hidden instructions, perform unauthorized signing, or engage in wallet-draining or phishing behavior.

18.     CloneMe requires users to review and approve transactions through compatible wallet software, including Phantom Wallet.

19.    Cryptocurrency transactions executed on the Solana blockchain require a wallet interface layer through which users review, sign, and submit transaction requests to the blockchain network.

20.    Non-custodial wallets such as Phantom Wallet serve as the user-facing transaction interface between decentralized applications and Solana users.

21.    Upon information and belief, Phantom Wallet is one of the dominant consumer-facing wallet interfaces within the Solana ecosystem and processes a substantial share of Solana wallet transaction requests.

22.    Because decentralized applications cannot complete user-authorized economic transactions without passing through a wallet interface, Phantom functions as a practical gatekeeper for commercial application access within the Solana ecosystem.

23.    Risk classifications, request-blocking screens, transaction interruptions, and safety warnings displayed by Phantom inside its wallet interface materially affect whether users will proceed with a decentralized application, whether the application can build market trust, and whether the application can operate under ordinary transaction conditions.

24.    CloneMe was submitted through Google's Chrome Web Store review process and approved for distribution. After approval, CloneMe became publicly available on the Chrome Web Store.

25.    On June 3, 2025, after CloneMe became publicly available, Plaintiff attempted to proceed through what should have been an ordinary Phantom Wallet confirmation flow for a CloneMe transaction.

26.    Instead of an ordinary confirmation process, Phantom displayed a full-screen warning headed "Request blocked".

27.    The warning stated: "This dApp could be malicious. Do not proceed unless you are certain this is safe. If you think this is incorrect, reach out at review@phantom.com."

28.    The same screen further stated: "For your safety, Phantom has blocked this request."

29.    The interface presented a primary "Close" button and a secondary continuation option labeled "Proceed anyway (unsafe)."

30.    When Plaintiff attempted to proceed, Phantom continued displaying the warning inside the transaction confirmation process and required use of a confirmation option labeled "Confirm (unsafe)."

31.    Phantom then displayed an additional screen headed "Are you sure?" stating: "Proceeding is unsafe, so Phantom blocked this request. You should close this dialogue."

32.    That screen required the user to acknowledge: "I understand that I could lose all of my funds by using this website," before reaching a final option labeled "Yes, confirm (unsafe)."

33.    Upon information and belief, Phantom's "Request blocked," "This dApp could be malicious," and unsafe confirmation warnings were standardized user-facing notices displayed through Phantom Wallet's transaction approval interface to users attempting to interact with CloneMe.

34.    Upon information and belief, the warnings were not private, individualized communications prepared specifically for Plaintiff or for a single user. They were standardized in-wallet warnings shown to members of the public who attempted to access or complete CloneMe-related transaction flows through Phantom Wallet.

35. Phantom's transaction approval interface is a commercial user-facing environment through which Phantom communicates risk classifications, approval conditions, and transaction-status information to wallet users deciding whether to interact with third-party applications.

36. Because these warnings appeared within Phantom Wallet's transaction approval environment and were displayed to users attempting to interact with CloneMe, the warnings functioned as public-facing commercial representations concerning the safety, legitimacy, and trustworthiness of Plaintiff's application.

37. Phantom publicly represented through its GitHub blocklist repository that the repository was the "single source of truth" for URLs flagged as malicious by the Phantom extension.

38. Plaintiff's domain was not listed on Phantom's public blocklist.

39. Plaintiff promptly contacted Phantom seeking clarification, technical review, remediation guidance, and removal or normalization of the warning status.

40. In written communications, Phantom stated that Plaintiff's domain was not blacklisted and that the issue was instead related to lack of whitelist or allowlist clearance.

41. In written communications, Phantom further stated that it does not review code for safety determinations.

42. In written communications, Phantom referred Plaintiff to non-technical criteria, including GitHub history, social activity, public identity, or vouching from developers known to Phantom.

43. Phantom ultimately declined to clear Plaintiff's domain.

44.     Phantom's public blocklist representation, its user-facing "Request blocked" warning, and its private explanation that CloneMe was not blacklisted but merely not whitelisted created a materially misleading security impression concerning CloneMe.

45.     Phantom failed to identify malicious code, wallet-draining functionality, phishing behavior, hidden signing behavior, unauthorized transaction execution, or other objectively identifiable malicious conduct associated with CloneMe.

46.     As a result, CloneMe remained subject to a request-blocking and unsafe-confirmation warning flow that impaired Plaintiff's launch efforts, commercialization activities, market credibility, goodwill, and ability to operate under ordinary wallet transaction conditions within the Solana ecosystem.

47.     Plaintiff's damages are presently estimated at not less than $22,338,468.00 based on a damages model provided to counsel.

## V.     COUNT I - VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 2

48.     This action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits monopolization, attempted monopolization, and the use of exclusionary or anticompetitive conduct to acquire or maintain monopoly power.

49.     Plaintiff incorporates by reference all preceding paragraphs.

50.     The relevant product market is the market for Solana-based non-custodial wallet access and transaction execution interfaces, including wallet-integrated transaction flows necessary for decentralized applications ("dApps") to function. The relevant geographic market is worldwide, or alternatively the United States.

51.     Upon information and belief, Phantom possesses substantial market power in the relevant market based on its role as one of the dominant wallet interfaces used by Solana users to

review, approve, and submit transaction requests. Phantom's market power is reflected not only by user adoption, but also by its practical ability to impair a Solana dApp's market access by placing request-blocking, unsafe-confirmation, or potentially malicious classifications directly inside the transaction approval flow used by wallet users.

52.    Phantom's market power is reinforced by user concentration, network effects, ecosystem dependency, and the importance of wallet trust in cryptocurrency transaction environments.

53.    Phantom used its position in the relevant market to impair Plaintiff's ability to commercially participate in the Solana ecosystem by maintaining request-blocking and unsafe-confirmation warning flows against CloneMe while declining to clear or normalize the application through objective technical review.

54.    Phantom's conduct had exclusionary effects by impairing Plaintiff's market access, launch efforts, commercialization activities, market credibility, and ability to compete under ordinary wallet transaction conditions.

55.    Phantom's conduct constitutes monopolization, or alternatively attempted monopolization and/or restrain competition, in violation of Section 2 of the Sherman Act.

56.    Plaintiff suffered injury to its business and property as a direct and proximate result of Phantom's conduct.

## VI.    COUNT II - DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT, 15 U.S.C. § 15(A)

57.    Plaintiff brings this cause of action for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

58.    Plaintiff incorporates by reference all preceding paragraphs.

59.    As alleged in Count I, Phantom violated Section 2 of the Sherman Act.

60.    Plaintiff suffered injury to its business and property by reason of Phantom's alleged anticompetitive conduct, including impaired market access, impaired launch opportunity, impaired commercialization efforts, reputational harm, diminished goodwill, lost profits, and lost market opportunity.

61.    Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorneys' fees pursuant to 15 U.S.C. § 15(a).

## VII.    COUNT III - FALSE OR MISLEADING REPRESENTATIONS IN COMMERCE, 15 U.S.C. § 1125(A)

62.    Phantom's warnings constitute false or misleading representations in commerce under 15 U.S.C. § 1125(a).

63.    Plaintiff incorporates by reference all preceding paragraphs.

64.    Phantom displayed standardized user-facing warnings through Phantom Wallet's transaction approval interface to users attempting to interact with CloneMe.

65.    Those warnings communicated factual implications concerning the safety, legitimacy, and trustworthiness of CloneMe.

66.    The warnings were false or misleading because Phantom maintained them despite failing to identify objectively identifiable malicious conduct associated with CloneMe.

67.    Plaintiff suffered commercial and reputational injury as a direct and proximate result of Phantom's false or misleading representations.

## VIII.    COUNT IV - NEGLIGENCE AND PUERTO RICO GENERAL TORT

68.    Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801, provides that a person who by act or omission causes damage to another through fault or negligence is obligated to repair the damage caused.

69.    Plaintiff incorporates by reference all preceding paragraphs.

70. Phantom voluntarily undertook to classify and communicate security-related warnings to wallet users and developers through its wallet interface and public blocklist process.

71. Having undertaken that function, Phantom owed a duty to exercise reasonable care in maintaining accurate warning classifications, review processes, and remediation procedures affecting third-party applications.

72. Phantom breached that duty by maintaining request-blocking and unsafe-confirmation warnings against CloneMe while relying on non-technical criteria and declining to conduct technical review sufficient to determine whether CloneMe was malicious, unsafe, or technically harmful.

73. Phantom's conduct foreseeably caused Plaintiff economic loss, reputational harm, impaired commercialization efforts, diminished goodwill, and interference with business operations.

74. Plaintiff suffered damages as a direct and proximate result of Phantom's fault, negligence, acts, and omissions.

## IX.    COUNT V - COMMERCIAL DISPARAGEMENT / INJURIOUS FALSEHOOD

75. This claim arises under Puerto Rico extra-contractual liability law, Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801, based on Phantom's alleged publication of warning classifications concerning CloneMe that injured Plaintiff's commercial reputation, goodwill, and economic interests.

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Phantom publicly and commercially communicated warning classifications concerning CloneMe through its user-facing wallet transaction interface.

78. Those warnings communicated or implied that CloneMe was malicious, dangerous, unsafe, fraudulent, or technically harmful.

79. Phantom lacked objective technical findings sufficient to substantiate the commercial implications communicated through the warnings.

80. Phantom acted with reckless disregard for the truth or falsity of the warning classifications by maintaining those warnings while admitting that it does not review code and while failing to identify malicious transaction behavior associated with CloneMe.

81. Phantom's conduct caused reputational harm, commercial disparagement, impaired market credibility, diminished goodwill, impaired commercialization opportunity, and economic injury to Plaintiff.

82. Plaintiff suffered damages as a direct and proximate result of Phantom's commercial disparagement and injurious falsehood.

### X.  COUNT VI - DECLARATORY AND INJUNCTIVE RELIEF

83. Plaintiff incorporates by reference all preceding paragraphs.

84. An actual and justiciable controversy exists regarding Phantom's authority to maintain request-blocking, unsafe-confirmation, or potentially malicious classifications against CloneMe absent objective technical findings or transparent review standards.

85. Plaintiff seeks declaratory and injunctive relief pursuant to applicable federal law, including 28 U.S.C. §§ 2201 and 2202, prohibiting Phantom from:

    a. attaching unsupported request-blocking, unsafe-confirmation, or potentially malicious classifications to Plaintiff's application absent objective and technically supportable security findings;

b.    communicating misleading commercial implications concerning Plaintiff's application;

c.    maintaining arbitrary or non-transparent remediation systems;

d.    imposing unequal or reputation-based review standards unrelated to objective application security; and

e.    continuing warning practices unsupported by consistently applied technical review procedures.

86.    Plaintiff further seeks injunctive relief requiring transparent, objective, and technically grounded review and remediation procedures applicable equally to similarly situated decentralized applications operating within Phantom-controlled transaction environments.

## XI.    DEMAND FOR JURY TRIAL

87.    Plaintiff demands trial by jury on all issues so triable.

## XII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that after a Trial by Jury, this Honorable Court enter judgment in favor of Plaintiff and against Defendant awarding compensatory damages in an amount not less than $22,338,468.00, or such other amount as may be proven at trial; treble damages pursuant to 15 U.S.C. § 15(a); damages for reputational harm, impaired launch opportunity, commercialization losses, diminished goodwill, business interruption, development losses; declaratory relief; attorneys' fees and costs where permitted by law; pre-judgment and post-judgment interest where permitted by law; and all additional reliefs the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of May 2026.

- 13 -

- 14 -

/S/JOSÉ VLADIMIR DÍAZ-TEJERA

José Vladimir Díaz-Tejera
USDC-PR 208604
DIAZ-TEJERA LAW FIRM
PO Box 423
Trujillo Alto, P.R. 00977
Tel 787-755-3440
Email: diaz_tejera_lawfirm@yahoo.com
Counsel for Plaintiff W Development LLC

- 14 -